BELFAST NATIONAL BANK *vs.* INHABITANTS OF STOCKTON.

Waldo.    Opinion August 19, 1881.

*Towns.    Municipal debts.    Unauthorized loans.*

One who lends money upon the representations of town officers that it is required for municipal purposes, in order to recover against the town therefor, must prove the appropriation of the money lent, to the discharge of legal municipal debts, unless such officers were authorized by a legal vote of the town to effect the loan.

Such appropriation of the money to the purposes stated, must have been by some person who stood in such relation to the town as to render his act of itself effective as between the town and its creditor, to discharge the debt to, which it was applied, or there must have been a ratification or acceptance of such payment on the part of the town.

Neither by corporate action, nor by corporate inaction, can a town knowingly retain the benefit of payments made by its agents in discharge of legal municipal debts, with moneys hired in its name without authority, and at the same time withdraw itself from liability for moneys so hired and used.

ON REPORT, the law court to render such judgment as the law and evidence warrant.

Assumpsit upon the following town order:

"$2000.                                   , "Stockton, July 16, 1878.

"To Joseph Seger, town treasurer, or his successor:    Pay to Belfast National Bank, two thousand dollars, it being for money hired for the year 1878.

|                | C. C. ROBERTS,  | } | Selectmen |
|                | E. H. CROCKER,  | { | of        |
| No. 68.        | F. J. MARDEN,   | } | Stockton."|

[Across face] "Accepted, Joseph Seger, treasurer."

The writ also contained the money counts, and was dated September 19, 1879.

Plea, general issue.

The material facts are stated in the opinion.

*William H. Fogler,* for the plaintiff, cited: *Augusta* v. *Leadbetter,* 16 Maine, 45; *Dennett* v. *Nevers,* 7 Maine, 399; *Orneville* v. *Pearson,* 61 Maine, 557; *Industry* v. *Starks,* 65 Maine, 167; *Bessey* v. *Unity, Id.* 347; *Sanborn* v. *Deerfield,*

2 N. H. 251; *Andover* v. *Grafton*, 7 N. H. 298; *Pike* v. *Middleton*, 12 N. H. 278; *West* v. *Erroll*, 58 N. H. (Reporter, June 11, 1879,; Dill. Mun. Corp. § § 384, *et seq.* 750; Green's Brice's Ultra Vires, (2 Am. ed.) 717, 729; Sedgwick Stat. and Const. Constr. 73; *Dill* v. *Wareham*, 7 Met. 438; *Ganse* v. *Clarksville*, (U. S. C. C. E. D. Mo.) 7 Reporter, 579; *The Mayor* v. *Ray*, 19 Wall. 468; *Moore* v. *Mayor*, 73 N. Y. 238; *Nat. Bank* v. *Mathews*, 98 S. C. 6260; *March* v. *Fulton Co.* 10 Wall. 684.

*A. P. Gould*, for the defendants.

There are two counts in the writ.

The action cannot be sustained on the first count which declares on the order, because the selectmen had no authority to issue it. *Parsons* v. *Monmouth*, 70 Maine, 262.

Nor can the count for money had and received be maintained. It was not shown that the money was needed, but it is said that it was needed, and convenient to pay the State tax and outstanding orders.

The selectmen, *virtute officii*, had no power to borrow money in behalf of the town, whatever the purpose for which it was obtained. The office is created, and certain specific duties not touching the question now at issue imposed. All the rest is left to inference or implication; see *Smith* v. *Cheshire*, 13 Gray, 318.

In New Hampshire, selectmen have always been empowered by statute, "to manage all the prudential affairs of the town," still it was there held that "selectmen have not authority, *ex officio*, without a vote of the town, to borrow money upon the credit of the town. *Rich* v. *Errol*, 51 N. H. 350; see also, *Sanborn* v. *Deerfield*, 2 N. H. 251; *Parsons* v. *Monmouth, supra; Hooper* v. *Emery*, 14 Maine, 375; *Ganse* v. *Clarksville*, 19 Alb. L. J. 253; Dill. Mun. Corp. § § 5, 81; 1 Daniel Nego. Instr. § 420; 2 Do. § 1530; *Mayor* v. *Ray*, 19 Wall. 468; *Baileyville* v. *Lowell*, 20 Maine, 182.

To hold the town as for money received and appropriated to its legitimate expenses, the receipt and appropriation must appear

by legal corporate action. The receipt and expenditure of it by the selectmen, is not sufficient, even though they may have used it in payment of debts of the town.

Wherever towns have been held for money borrowed by their officers, the appropriation has been by authority of the town previous or subsequent, evidenced by some corporate action, not by the mere act of its officers. In *Ganse* v. *Clarksville, supra,* and cases there cited, and Dill. Mun. Corp. § § 384, 750, and notes, corporate appropriation was shown, and *Ganse* v. *Clarksville*, clearly and expressly recognized the necessity of showing the appropriation of the money borrowed to lawful municipal purposes, by corporate action. S. p. *Herzo* v. *San Francisco*, 33 Cal. 134; *Dill* v. *Wareham*, 7 Met. 438; *Mayor* v. *Ray*, 19 Wall. 484; *Argenti* v. *San Francisco*, 16 Cal. 255; *McCracken* v. *Same*, 16 Cal. 591; *Pimental* v. *Same*, 21 Cal. 351.

"No person can make himself a creditor of another by voluntarily discharging a duty which belongs to that other." *Salsbury* v. *Philadelphia*, 44 Pa. St. 303; *Siebrecht* v. *New Orleans*, 12 La. Ann. 496.

An unauthorized contract or act on the part of the officers of a town or city, however advantageous, does not bind the corporation, or subject it to legal liability. *Loker* v. *Brookline*, 13 Pick. 343; *Jones* v. *Lancaster*, 4 Pick. 149; *Haskell* v. *Knox*, 3 Maine, 445; *Morrell* v. *Dixfield*, 30 Maine, 157; *Moor* v. *Cornville*, 13 Maine, 293; *Ingalls* v. *Auburn*, 51 Maine, 352; *Field* v. *Towle*, 34 Maine, 405; *French* v. *Auburn*, 62 Maine, 452; *Kelley* v. *Lindsey*, 7 Gray, 287; *Railroad Nat. Bank* v. *Lowell*, 109 Mass. 214.

The payment of the State tax was unauthorized, and contrary to the statute provisions. R. S., c. 6, § § 38, 39, 60, 44, 123, 126, 127. It did not constitute a debt of the town, or a corporate liability of any kind.

SYMONDS, J. It may be regarded as settled in this State that one who lends money upon the representation of town officers that it is required for municipal purposes, in order to recover against the town therefor, must prove the appropriation of the money lent to the discharge of legal municipal debts, unless such

officers were authorized by vote of the town at a legal meeting to effect the loan. "There can be no such thing as a general and unlimited authority in municipal officers, to borrow money on the credit of the town by which they are elected, without regard to the purposes to which it is devoted. To show money had and received to the use of the plaintiff by a town, it will not suffice merely to show money lent by the plaintiff, upon the representations of its officers, that it was required for legitimate expenditures." "But where the lender proceeds against the town upon this ground, we think he is bound, in order to recover, to show the appropriation of the money to legitimate expenses of the town." *Bessey* v. *Unity*, 65 Maine, 342 ; *Parsons* v. *Monmouth*, 70 Maine, 264.

"It is strongly implied in the two cases last cited, that the money thus advanced, and shown to have been actually appropriated to the discharge of legal liabilities of the town, would be held to be legally recoverable in an action for money had and received against the town. We see no good reason for excusing the town from refunding it, when it has been actually thus appropriated. . . . . It is the payment of the lawful debts of the town by its own agents with the plaintiff's money, which constitutes the cause of action." *Billings* v. *Monmouth, ante*, p. 174.

The opinion of the court from which the last extract is taken, seems to determine the law of the present case, and to render unnecessary any further discussion of the legal principles involved, which had been elaborately argued in this case before that decision was announced. It is only upon the ground therein stated that the plaintiffs claim to recover. They do not argue that the town gave prior authority for procuring the loan from the bank.

We do not understand the opinion in *Billings* v. *Monmouth*, to be intended to contravene the maxim that no one can make himself the creditor of another by the unsolicited payment of his debts ; or to hold the fact that the defendants, without their own act or will, have had the benefit of the plaintiffs' money to be the sole and sufficient ground of liability. *Agawam National Bank* v. *South Hadley*, 128 Mass. 503.

In order so to charge the town with liability, the use of the moneys loaned, their appropriation to the purpose stated, must

have been by some person who stood in such relation to the town as to render his act of itself effective, as between the town and its creditor, to discharge the debt to which they were applied, or there must have been a ratification or acceptance of such payment on the part of the town.

Without corporate act or assent, or the agency of a person exercising some authority, there can be no such thing in a legal sense as the payment of the debt of a town. If a person having no authority assumes to pay a municipal debt, the payment is a nullity at the will of the town. Its relations to its creditor cannot be affected by a stranger against its will; and the act of the creditor alone, while it may destroy the evidence of debt, and deprive him of remedy, cannot (at least theoretically, if it may practically,) extinguish the legal obligation of the contract against the will of the other party. Nor can any arrangement between the creditor and a stranger, to this effect, be forced upon the acceptance of the debtor.

The language of the court, in the opinion cited, refers to a case where there was in fact and in law a payment of the debt of a town by the use of moneys hired without authority; where the debt was discharged not only in form but in effect. "The vital question of fact," it is stated, "is whether the plaintiff's money has actually been applied by the town officers to the extinguishment of legal claims against the town." If one without authority assumes to pay a municipal debt the town may object or may assent. It may, upon discovery of the fact, defeat the attempted discharge of its debts in that way. But neither by corporate action, nor by corporate inaction, can it knowingly retain the benefit of payments so made by its agents, with moneys hired in its name without authority, and thereby give effect, so far as to release itself from the old debt, to the acts of its officers assuming more than their legal powers, and at the same time withdraw itself from liability for moneys so hired and used. This would be for the town tacitly to hold all that was favorable to itself in a single transaction, and openly to reject all that was not beneficial, although it was only a precise equivalent for the advantage gained. The act of the agent in procuring the loan

and paying the debt is a thing to be accepted or rejected as a whole. The corporation owes either the old debt or the new, and failure to act, to attempt even the expression of dissent, at legal meetings held after official reports have advised them that such a loan has been made, that their treasurer, or one of the selectmen, has employed it in paying a municipal debt, outstanding and overdue, and that the creditor has accepted the payment and given a formal release of his claim, may be clear evidence of the silence which gives consent. Formal corporate action is not always necessary to show the assent of the body corporate. By non-action, after knowledge of the facts, there may be recognition by the principal of the agent's acts as his own.

We are aware that it is the object of the law, on urgent grounds of public policy, "to protect cities and towns from the creation of municipal debts, without sufficient necessity and consideration, and without proper provision for payment, and to prevent improvident and reckless expenditures of public money, as a natural consequence of debts so contracted;" and we do not now consider cases in which an agent without authority, in the name, and for the alleged benefit, of the town, incurs debts where none existed before, but confine our attention to the case presented, of an exchange of liabilities, the creation of a new debt on similar terms to pay another which is valid and due. In such case, if the first debt is paid, it is precisely as if the town itself had the amount of it in its treasury, derived from the plaintiff's loan.

In this case, with the exception of the $1162.90 paid on account of the State tax, which is an item to be considered by itself, we are not prepared to find as matter of fact upon the evidence reported, that the town received the benefit of the loan from the bank. The claim is, that the balance was turned over by Mr. Roberts, the selectman who effected the loan, to the treasurer in money and town orders which Mr. Roberts had paid. That the treasurer received any part of it in money, the testimony certainly fails to prove. His own statements in support of the plaintiffs' claim on this point are full of contradictions, at one time saying that he received in cash the amount of the loan,

except the interest on it and the State tax, then that either cash or its equivalent, that is to say, town orders, to that amount, were received by him, and finally admitting at the close of the cross-examination, that the whole amount of the loan from the bank was paid away by Mr. Roberts. The statements of Mr. Roberts, in regard to cash payments to the treasurer out of this loan are quite as unsatisfactory. When asked if he paid the treasurer as much as five dollars of the sums received from the bank, he replied that he was not able to state anything about it, and this reply seems to contain the substance of his testimony on this point.

It is not proved that the money loaned, or any part of it, passed into the hands of the town treasurer.

Is this balance shown to have been applied by Mr. Roberts to the payment of town debts?

The treasurer knows nothing of the use of this specific fund. It was hired in July, 1878. The books of the treasurer show no credit of it till March, 1879. He simply knows that Mr. Roberts was accustomed, during the year, to pay orders and turn them over to him on account of the town as cash. He may infer that Mr. Roberts used a part of this loan for that purpose, but he does not know it. He was accustomed to intrust Mr. Roberts with funds of the town to be used in meeting its liabilities, and the case strongly indicates that money from other sources was wrongfully procured by Mr. Roberts in the name of the town. The accounts of the treasurer throw little light on the matter. They present no correct account of the financial affairs of the town, as conducted by the municipal officers. Mr. Roberts' testimony scarcely denies that town orders, to the amount of twenty-six hundred dollars, were issued for money hired prior to the date of this loan, which did not appear in the settlement between the selectmen and the treasurer at the close of the year. Why were they knowingly excluded from the treasurer's accounts and from the settlements with him, if not to serve fraudulent purposes on the part of the principal agent for the town in these transactions? Nor is this the only sign, which the case gives, of fraudulent mismanagement of the affairs of the town.

In such a state of facts, it is not enough, to charge the town with liability, as to the balance of the loan above the $1162.90, for Mr. Roberts to testify that it was applied to the payment of quite an accumulation of town orders, while distinctly declaring his inability to designate what order, or what debt, of the town was paid by it. It was part of the plaintiff's case, if they would recover under the rule of law on which they rely, to show that their loan was used by the town agents to discharge existing legal municipal obligations. The first step in proving that is to show what debts were paid by it. The case leaves more than a suspicion that municipal funds were misapplied by the agent who effected this loan ; and for all that we see in the evidence, quite as likely this amount as any other. We do not find it proved that the town has ever received the benefit of this unauthorized loan, except to the extent that it went to pay the State tax.

It is an admission in the case that on August 1, 1878, Mr. Roberts paid to the State Treasurer the sum of $1162.90 on account of "the State tax levied by the State upon the said inhabitants of the town of Stockton for the year 1877, then due and unpaid." Mr. Roberts says, "That sum was paid from the identical money which I received from the bank." The act of 1877, c. 390, under which the State tax was levied, provided that each town should be assessed, *and should pay*, the amount set against it in the lists ; and the warrant from the Treasurer of State was directed to require the selectmen or assessors to assess the tax, and "*to pay*, or to issue their several warrants requiring the collectors to pay, the said treasurer on or before January 1, 1878," the sum against such town in that act contained.

Here seems to be a provision authorizing a direct payment of the State tax by the municipal officers to the State Treasurer. It is true the State holds in reserve the power to proceed directly against delinquent assessors or collectors, to compel the performance of official duty on their part, but no default by them can defeat the claim of the State upon the town. If the assessors fail in their duty, they may be personally liable, and the tax

may be levied without their aid.    If the collector is deficient, the express provision is that after certain proceedings against him the town shall pay the amount for which he is in default ; to be levied finally, like other debts, on the real and personal estate of any inhabitant.    But we think it is not the true view of the law to hold that there is no duty resting upon the town to pay the State tax, or to cause it to be paid, until after the State has itself exhausted every process by which it has sought to guard the integrity and efficiency of those who have its assessment and collection in charge.    At least under the act of 1877, notwithstanding the precautions taken for the fidelity of officers, the tax remains a liability of the town in such sense that payment of it by the municipal officers is not necessarily in all cases an act beyond their official authority.

The case does not show that the town in any way suffered detriment by the direct payment of the tax which had been assessed upon the polls and estates of its inhabitants and was then overdue and unpaid.    There is no proof of default on the part of the collector, for which he was liable and from which liability he or his property was released to the prejudice of the town. The evidence tends to show the contrary — that the town received into its treasury the amount of the collected tax.    The defendants never disavowed the act of their agent in paying the tax with borrowed money.    We think the course of proceeding has been in effect an adoption of that act, and the tax is paid.    To this extent, the town silently holds the plaintiffs' moneys so applied, and reaps the full benefit of them.

The payment was not the act of a stranger who sought to thrust himself into the position of creditor of the town without their consent, but of the principal municipal officer, who assumed to act for them in that respect and whose power to make a valid payment of the tax, the town has never seen fit to question.

> *Judgment for plaintiffs, for*
> *$1162.90, and interest*
> *from August 1, 1878.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and LIBBEY, JJ., concurred.